WINTERS SPELMAN PLLC
STEPHEN A. SPELMAN, NSB: 14278
3191 E. Warm Springs Rd. Ste. 100
Las Vegas, NV 89210
a.spelman@wintersspelman.com
702-832-0342

RAMIREZ-SMITH LAW
CASEY PARSONS, ISB: 11323
CPARSONS@NRSDT.COM
*Pro Hac Vice Counsel
444 W. Iowa Ave.
Nampa, ID 83686
208-461-1883

*Attorneys for Petitioner*

UNITED STATES DISTRICT COURT
FEDERAL DISTRICT COURT OF NEVADA

| | |
|---|---|
| Humberto ACEVEDO REYES,<br><br>                          Petitioner,<br><br>v.<br><br>Brian HENKEY, Field Office Director of Enforcement and Removal Operations, Salt Lake City Field Office, Immigration and Customs Enforcement; Michael BERNACKE, Acting Director of the Las Vegas U.S. Immigration and Customs Enforcement Field Sub-Office; Kristi NOEM, Secretary, U.S. Department of Homeland Security Pamela BONDI, U.S. Attorney General; Darin BALAAM, Sheriff, Washoe County Sheriff's Office,<br><br>                          Respondents. | Case No. 2:25-cv-02206<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

1.  Petitioner, Humberto Acevedo Reyes, is in the physical custody of Respondents at the Washoe County Jail in Reno, Nevada following his transport from Idaho, where he was detained and arrested during a raid in Wilder, Idaho by ICE. He now faces unlawful detention because the Department of Homeland Security (DHS) and the Executive Office of Immigration Review (EOIR) have concluded Petitioner is subject to mandatory detention.

2.  Petitioner is charged with, inter alia, having entered the United States without admission or inspection. *See* 8 U.S.C. § 1182(a)(6)(A)(i).

3.  Based on this allegation in Petitioner's removal proceedings, DHS denied Petitioner release from immigration custody, consistent with a new DHS policy issued on July 8, 2025, instructing all Immigration and Customs Enforcement (ICE) employees to consider anyone inadmissible under § 1182(a)(6)(A)(i)—i.e., those who entered the United States without admission or inspection—to be subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond.

4.  Similarly, on September 5, 2025, the Board of Immigration Appeals (BIA or Board) issued a precedent decision, binding on all immigration judges, holding that an immigration judge has no authority to consider bond requests for any person who entered the United States without admission. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). The Board determined that such individuals are subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond.

5.  Petitioner's detention on this basis violates the plain language of the Immigration and Nationality Act. Section 1225(b)(2)(A) does not apply to individuals like Petitioner who previously entered and are now residing in the United States. Instead, such individuals are

subject to a different statute, § 1226(a), that allows for release on conditional parole or bond. That statute expressly applies to people who, like Petitioner, are charged as inadmissible for having entered the United States without inspection. *Vazquez v. Bostock*, No. 3:24-cv-05240-TMC, Dkt. 65 (W.D. Wash. September 30, 2025).

6. Respondents' new legal interpretation is plainly contrary to the statutory framework and contrary to decades of agency practice applying § 1226(a) to people like Petitioner.

7. Accordingly, Petitioner seeks a writ of habeas corpus requiring that he be released unless Respondents provide a bond hearing under § 1226(a) within seven days.

8. Pro Hac Vice counsel for Petitioner will comply with the local rules for entering her appearance within fourteen (14) days of the filing of this petition.

## JURISDICTION

9. Petitioner is in the physical custody of Respondents. Petitioner is detained at the Washoe County Jail in Reno, Nevada.

10. This Court has jurisdiction under 28 U.S.C. § 2241(c)(5) (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, section 9, clause 2 of the United States Constitution (the Suspension Clause).

11. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

12. Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-500 (1973), venue lies in the United States District Court for the State of Nevada, the judicial district in which Petitioner currently is detained.

13. Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in the Federal District Court of Nevada.

## REQUIREMENTS OF 28 U.S.C. § 2243

14. The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

15. Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## PARTIES

16. Petitioner has been in immigration detention since around October 19, 2025. After arresting Petitioner in Wilder, Idaho, ICE did not set bond and Petitioner is unable to obtain review of his custody by an IJ, pursuant to the Board's decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

17. Respondent Brian Henkey is the Acting Field Office Director of the Salt Lake City Field Office of ICE's Enforcement and Removal Operations division. As such, Mr. Henkey

is Petitioner's immediate custodian and is responsible for Petitioner's detention and removal. He is named in his official capacity.

18. Respondent Michael Bernacke is the Acting Director of the Las Vegas, Nevada U.S. Immigration and Customs Enforcement Field Sub-Office. As such, Mr. Bernacke is also Petitioner's custodian and is responsible for Petitioner's detention and removal. He is named in his official capacity.

19. Respondent Darin Balaam is the Sheriff of Washoe County and is therefore the warden of the Washoe County Jail, a facility used by ICE to detain individuals in removal proceedings. As such, Ms. Balaam is also Petitioner's custodian and is responsible for Petitioner's detention. He is named in his official capacity.

20. Respondent Kristi Noem is the Secretary of the Department of Homeland Security. She is responsible for the implementation and enforcement of the Immigration and Nationality Act (INA), and oversees ICE, which is responsible for Petitioner's detention. Ms. Noem has ultimate custodial authority over Petitioner and is sued in her official capacity.

21. Respondent Pamela Bondi is the Attorney General of the United States. She is responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system it operates is a component agency. She is sued in her official capacity.

## LEGAL FRAMEWORK

22. The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.

23. First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an IJ. *See* 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are generally

entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c).

24. Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2).

25. Last, the INA also provides for detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b).

26. This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).

27. The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

28. Following the enactment of the IIRIRA, EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225 and that they were instead detained under § 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

29. Thus, in the decades that followed, most people who entered without inspection and were placed in standard removal proceedings received bond hearings, unless their criminal history rendered them ineligible pursuant to 8 U.S.C. § 1226(c). That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving"

were entitled to a custody hearing before an IJ or other hearing officer. *See* 8 U.S.C. § 1252(a) (1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

30. On July 8, 2025, ICE, "in coordination with" DOJ, announced a new policy that rejected well-established understanding of the statutory framework and reversed decades of practice.

31. The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission,"[1] claims that all persons who entered the United States without inspection shall now be subject to mandatory detention provision under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended and affects those who have resided in the United States for months, years, and even decades.

32. On September 5, 2025, the BIA adopted this same position in a published decision, *Matter of Yajure Hurtado*. There, the Board held that all noncitizens who entered the United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for IJ bond hearings.

33. Since Respondents adopted their new policies, dozens of federal courts have rejected their new interpretation of the INA's detention authorities. Courts have likewise rejected *Matter of Yajure Hurtado*, which adopts the same reading of the statute as ICE. *See, e.g.*, *Vazquez v. Bostock*, No. 3:24-cv-05240-TMC, Dkt. 65 (W.D. Wash. September 30, 2025).

34. Even before ICE or the BIA introduced these nationwide policies, IJs in the Tacoma, Washington, immigration court stopped providing bond hearings for persons who entered the United States without inspection and who have since resided here. There, the U.S.

---

[1] *Available at* https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission.

PETITION FOR WRIT OF HABEAS CORPUS - 6

District Court in the Western District of Washington found that such a reading of the INA is likely unlawful and that § 1226(a), not § 1225(b), applies to noncitizens who are not apprehended upon arrival to the United States. *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025).

35. Subsequently, court after court has adopted the same reading of the INA's detention authorities and rejected ICE and EOIR's new interpretation. *See, e.g.*, *Vazquez v. Bostock,* No. 3:24-cv-05240-TMC, Dkt. 65 (W.D. Wash. September 30, 2025)*; Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *Diaz Martinez v. Hyde*, No. CV 25-11613-BEM, --- F. Supp. 3d ----, 2025 WL 2084238 (D. Mass. July 24, 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Samb v. Joyce*, No. 25 CIV. 6373 (DEH), 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi*, No. 25-CV-3051 (ECT/DJF), --- F. Supp. 3d ----, 2025 WL 2466670 (D. Minn. Aug. 27, 2025) *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486-BRM-EAS, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Vasquez Garcia v. Noem*, No. 25-cv-02180-DMS-MM, 2025 WL 2549431 (S.D. Cal. Sept. 3,

2025); *Zaragoza Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *see also, e.g.*, *Palma Perez v. Berg*, No. 8:25CV494, 2025 WL 2531566, at *2 (D. Neb. Sept. 3, 2025) (noting that "[t]he Court tends to agree" that § 1226(a) and not § 1225(b)(2) authorizes detention); *Jacinto v. Trump*, No. 4:25-cv-03161-JFB-RCC, 2025 WL 2402271 at *3 (D. Neb. Aug. 19, 2025) (same); *Anicasio v. Kramer*, No. 4:25-cv-03158-JFB-RCC, 2025 WL 2374224 at *2 (D. Neb. Aug. 14, 2025) (same).

36. Courts have uniformly rejected DHS's and EOIR's new interpretation because it defies the INA. As the *Rodriguez Vazquez* court and others have explained, the plain text of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Petitioner.

37. Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229a, to "decid[e] the inadmissibility or deportability of a[] [noncitizen]."

38. The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without inspection. *See* 8 U.S.C. § 1226(c)(1)(E). Subparagraph (E)'s reference to such people makes clear that, by default, such people are afforded a bond hearing under subsection (a). As the *Rodriguez Vazquez* court explained, "[w]hen Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies." *Rodriguez Vazquez*, 779 F. Supp. 3d at 1257 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)); *see also Gomes*, 2025 WL 1869299, at *7.

39. Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

40. By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether a[] [noncitizen] seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

41. Accordingly, the mandatory detention provision of § 1225(b)(2)(A) does not apply to people like Petitioner, who have already entered and were residing in the United States at the time they were apprehended.

## FACTS

42. Petitioner resides in the state of Idaho.

43. On October 19, 2025, Petitioner was arrested during an ICE raid in Wilder, Idaho. Petitioner has been transferred to and is now detained at the Washoe County Jail in Reno, Nevada.

44. DHS placed Petitioner in removal proceedings before the immigration court pursuant to 8 U.S.C. § 1229a. ICE has charged Petitioner with, *inter alia*, being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection.

45. Petitioner lives in the state of Idaho, and is currently detained at the Washoe County Jail. He has been in the United States since 1997. He has no criminal history and no prior

encounters with immigration enforcement. He lives with his wife in Idaho, who together have five (5) children that are United States Citizens, aged twenty-four (24), twenty-three (23), twenty-one (21), sixteen (16), and fourteen (14) years old. He is also the sole provider for his family.

46.     He has no violent criminal history and strong ties to the community. Petitioner is neither a flight risk nor a danger to the community.

47.     Following Petitioner's arrest, he was eventually transferred to the Washoe County Jail in Reno, Nevada. ICE issued a custody determination to continue Petitioner's detention without an opportunity to post bond or be released on other conditions.

48.     Pursuant to *Matter of Yajure Hurtado*, the immigration judge is unable to consider Petitioner's bond request.

49.     As a result, Petitioner remains in detention. Without relief from this court, he faces the prospect of months, or even years, in immigration custody, separated from his family and community.

## CLAIMS FOR RELIEF

### COUNT I

### Violation of the INA

50.     Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

51.     The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by

Respondents. Such noncitizens are detained under § 1226(a), unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

52. The application of § 1225(b)(2) to Petitioner unlawfully mandates his continued detention and violates the INA.

## COUNT II

### Violation of Due Process

53. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

54. The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

55. Petitioner was arrested and is detained in violation of his rights under the Fourth Amendment of the United States Constitution.

56. Petitioner has a fundamental interest in liberty and being free from official restraint.

57. The government's detention of Petitioner without a bond redetermination hearing to determine whether he is a flight risk or danger to others violates his right to due process.

### PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

    a. Assume jurisdiction over this matter;

    b. Order that Petitioner shall not be transferred outside the Federal District Court of Nevada while this habeas petition is pending;

  c. Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

  d. Issue a Writ of Habeas Corpus requiring that Respondents release Petitioner or, in the alternative, provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days;

  e. Declare that Petitioner's detention is unlawful;

  f. Award Petitioner attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

  g. Grant any other and further relief that this Court deems just and proper.

DATED this 7th day of November 2025.

            By: /s/ Casey Parsons
            Casey Parsons
            Attorneys for Petitioner